**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RAY CRUZ-PEREZ, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | Case No. |
| **v.** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **PENN NATIONAL GAMING, INC., and HC JOLIET, LLC d/b/a HOLLYWOOD CASINO JOLIET,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Ray Cruz-Perez ("Plaintiff"), on behalf of himself and others similarly situated, brings this Class and Collective Action Complaint against Penn National Gaming, Inc. and HC Joliet, LLC d/b/a Hollywood Casino Joliet (collectively, "Defendants").

### NATURE OF SUIT

1.     Plaintiff Ray Cruz-Perez brings this wage and hour class and collective action against Defendants Penn National Gaming, Inc. and HC Joliet, LLC d/b/a Hollywood Casino Joliet.  This case concerns two unlawful practices at Defendants' Illinois casinos (Hollywood Casino Joliet, Argosy Casino Alton, and Hollywood Casino Aurora) whereby Defendants violate federal and Illinois wage and hour laws.

2.     First, Defendants deducted from the wages of Plaintiff Cruz-Perez and all others similarly situated the costs to obtain and thereafter maintain and renew Illinois Occupational Gaming Licenses.  This practice violates both federal and Illinois law.  As multiple federal district courts have held, these gaming licenses are primarily for the benefit and convenience of the employers (here, Defendants Penn National Gaming, Inc. and HC Joliet, LLC).  As such, pursuant

CLASS AND COLLECTIVE ACTION COMPLAINT

to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, these gaming license costs may not be deducted from an employee's wages to the extent the deductions bring the employee's wages below the federally-mandated $7.25 per hour minimum wage. In addition, the gaming license deductions violate the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. Ann. 105/1, *et seq.*, because they bring employees' wages below the Illinois minimum wage. Finally, the gaming license deductions violate the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. Ann. 115/1, *et seq.*, because Defendants failed to obtain the express written consent of the employee at the time the deductions are made and because the deductions are to the benefit of the employer. Plaintiff asserts the gaming license deduction claims as collective actions pursuant to the FLSA, 29 U.S.C. § 216(b), and class actions pursuant Federal Rule of Civil Procedure 23.

3.  Second, during a span of several months in 2017, Defendants deducted a 30-minute period per shift from the wages of Plaintiff and all other similarly situated employees; however, the employees were not provided a 30-minute meal period. As such, this was simply an auto deduction of time worked violating the FLSA, IMWL, and IWPCA. With respect to the FLSA and IMWL claims, Plaintiff and all other similarly situated employees were paid at or below the applicable minimum wages such that any deduction of wages necessarily created minimum wage violations. With respect to the IWPCA claim, Plaintiff and all other similarly situated employees did not expressly consent in writing to the deductions at the time the deductions were made and, given that the meal periods never occurred, the deductions were not to the benefit of the employees.

## JURISDICTION AND VENUE

4.  The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. The Court possesses subject matter jurisdiction over Plaintiff's FLSA claims based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court

CLASS AND COLLECTIVE ACTION COMPLAINT

likewise has subject matter jurisdiction over Plaintiff's state-law wage and hour claims because they are so related to the FLSA claims that they form part of the same case and controversy, satisfying supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.  Plaintiff Cruz-Perez worked for Defendants at their Hollywood Casino Joliet property, which Defendants operate within the Eastern Division of the Northern District of Illinois.

## PARTIES

6.      Plaintiff Ray Cruz-Perez is an individual residing in Joliet, Illinois.  Since 2011, Plaintiff Cruz-Perez has been employed by Defendants Penn National Gaming, Inc. and HC Joliet, LLC as a table games dealer at Hollywood Casino Joliet in Joliet, Illinois.  Plaintiff Cruz-Perez's executed Consent to Join is attached and incorporated herein as **Exhibit A** pursuant to 29 U.S.C. 216(b).

7.      Defendant Penn National Gaming, Inc. ("PNG") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Wyomissing, Pennsylvania.

8.      Defendant HC Joliet, LLC d/b/a Hollywood Casino Joliet ("HC Joliet") is a limited liability company organized under the laws of the State of Illinois with, according to its filings with the Illinois Secretary of State, its principal place of business in Wyomissing, Pennsylvania. However, HC Joliet is the corporate entity affiliated with the Hollywood Casino Joliet property located in Joliet, Illinois.  Upon information and belief, HC Joliet's principal place of business is in Joliet, Illinois.

CLASS AND COLLECTIVE ACTION COMPLAINT

9.      HC Joliet is a wholly-owned subsidiary of PNG.  Together, PNG and HC Joliet operate the Hollywood Casino Joliet property located in Joliet, Illinois.  In addition, PNG operates two other casinos in Illinois—Argosy Casino Alton and Hollywood Casino Aurora—where PNG employs casino workers who are similarly situated to Plaintiff.

COMMON FACTUAL ALLEGATIONS

**Defendants Jointly Employed Plaintiff and All Others Similarly Situated**

10.      PNG operates a hub and spoke employment structure whereby, PNG, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Defendant HC Joliet, Argosy Casino Alton and Hollywood Casino Aurora (collectively, the subsidiary casino entities).  By design, each individual subsidiary casino entity is the acknowledged employer of the employees, like Plaintiff, who physically work at the casino property.  However, as a matter of economic reality, from its position at the operational center of this structure, PNG has the ability to and, in fact, does operate its subsidiary casinos and instructs the entities on how and when to execute employment policies.  The subsidiaries casino entities must and do follow PNG's operational instructions.  Due to the pervasive control PNG both possesses and exercises over the employees at each of its casinos (both directly and indirectly), PNG is a joint employer of Plaintiff and all others similarly situated, along with each respective subsidiary casino entity, like Defendant HC Joliet.

11.      There is no material difference between the manner in which PNG treats each of its casino properties or the Plaintiff (and those who are similarly situated to him) who work at each of the PNG casino properties.  Each of the casino properties is akin to a regional office of PNG's nationwide gaming operation with PNG in control and directing the policies and procedures across the country that affect the day-to-day lives of Plaintiff and all other similarly situated employees.

CLASS AND COLLECTIVE ACTION COMPLAINT

12.     At all relevant times, PNG, with and through the individual subsidiary casino entities, jointly employed each Plaintiff (and other similarly situated employees) because:

        a.     PNG had the right to and did exercise control over the hiring and firing of Plaintiff and all other similarly situated employees;

        b.     PNG had the right to and did supervise the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;

        c.     PNG had the right to and did determine the rate and method of payment for Plaintiff and all other similarly situated employees; and

        d.     PNG was primarily responsible for and did maintain the employment records for Plaintiff and all other similarly situated employees.

**The Gaming License Deductions Are Unlawful and Primarily Benefit the Employers**

13.     As owners and operators of gaming establishments (*i.e.*, casinos) within the State of Illinois, Defendants are subject to the Illinois Gambling Act, 230 Ill. Comp. Stat. Ann. 10/1, *et seq*.

14.     Pursuant to the Illinois Gambling Act, Defendants must ensure their employees possess Occupational Gaming Licenses in order to conduct Defendants' casino businesses. Without licensed employees, Defendants' Illinois casinos could not function. *See* Illinois Gambling Act, 230 Ill. Comp. Stat. Ann. 10/9.

15.     Pursuant to the Illinois Gambling Act's interpreting regulations, Occupational Gaming Licenses cost between $1,000 and $75 for an application fee.  In addition, Occupational Gaming Licenses cost $50 for an annual license fee.  *See* Ill. Admin. Code tit. 86, § 3000.210.

16.     Defendants have established a uniform gaming license deduction policy that governs all employees at its Illinois casinos.

CLASS AND COLLECTIVE ACTION COMPLAINT

17.     Under this policy, Defendants deduct from their employees' wages the amount it costs Defendants to initially obtain and thereafter renew the employees' state-issued gaming licenses.

18.     Defendants' employees' state-issued gaming license is primarily for the benefit or convenience of Defendants.  Defendants' casinos exist in a heavily regulated environment. For example, Defendants can only have table games in their casinos if they are operated by employees (table games dealers) who have the required state-issued gaming license. These state-issued gaming licenses are specifically required for the employee's performance of the employer's particular business. Without these state licensed employees, Defendants could not compliantly operate their casinos and, in turn, generate the revenues needed to support their operations and realize profits.  Also, courts interpreting the requirements of 29 C.F.R. § 531.35 ("Free and clear" payment; "kickbacks") have drawn a line between costs arising from employment itself and those arising in the ordinary course of life. Costs that "primarily benefit the employee" are universally ordinary living expenses that one would incur in the course of life outside the workplace. Occupational licensing costs—like the state-issued gaming license at issue here—arise out of employment rather than the ordinary course of life.  To that end, Plaintiff and other similarly situated employees have no use for their gaming license in the ordinary course of life outside the workplace.  Therefore, Defendants' employees' state-issued gaming license primarily benefits the employer, not the employee.

19.     Given that Defendants' gaming license deductions primarily benefit Defendants (as opposed to Plaintiff and similarly situated employees), Defendants may not deduct the gaming license costs from employees' wages to the extent they create a minimum wage violation under the terms of the FLSA.

CLASS AND COLLECTIVE ACTION COMPLAINT

20.     For Defendants' many employees, like Plaintiff, who are paid a direct cash wage of $7.25 per hour (the federally required minimum wage) or less, which include, among others, Defendants' tipped employees (like Plaintiff) for whom Defendants pay a sub-minimum direct cash wage and claim an FLSA section 3(m) tip credit, this gaming license deduction is unlawful because it necessarily reduces the employee's earnings below the required minimum wage or overtime compensation in the workweeks in which Defendants make the deduction, resulting in violations of the FLSA.

21.     As the Department of Labor has explained, when an employer claims an FLSA section 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions because any such deduction reduces the tipped employee's wages below the minimum wage.

22.     This is not the first time a Court has considered the applicability of the FLSA to the common casino industry practice of deducting the costs of obtaining and renewing gaming licenses from employees' wages in the context of minimum wage violations.

23.     In *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019), the Court found "[t]he necessity of a gaming license arises out of employment, and therefore, it primarily benefits Defendants, as employers.  Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license." *Id*. at 1049.  In *Lockett*, the Court likewise found that, because the named plaintiffs were tipped employees earning a direct cash wage of $7.24 or less, any deduction necessarily created a minimum wage violation. *Id*. at 1048-49.

24.     In *Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019), the Court found "considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw, the gaming license fee is a cost arising from employment and not arising in the

CLASS AND COLLECTIVE ACTION COMPLAINT

ordinary course of life. Plaintiffs have satisfied their burden at this early stage in the litigation to plead facts that would support the conclusion that the gaming license fee primarily benefits Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and [Missouri Minimum Wage Law]." *Id*. at *3.

25.     Likewise, the Department of Labor announced in November 2018 that it had completed an investigation and concluded that a casino operator's deductions made from employees' wages to cover its costs for individual employee's casino gaming licenses created minimum wage violations when those deductions brought the employee's pay below the federal minimum wage of $7.25 per hour. In that case, the casino operator was required to pay $175,128 in back wages and damages to 889 employees at its casinos.

26.     With respect to Plaintiff Cruz-Perez, Defendants have deducted the $50 cost of renewing the gaming license each year he has worked for Defendants. For example, during a pay-period beginning on June 22, 2018 and ending on July 5, 2018, Defendants deducted $10 of the $50 gaming license renewal fee from Plaintiff Cruz-Perez's wages. At the time, Mr. Cruz earned a direct cash wage of $6.88 per hour. Given that, pursuant to the FLSA, Defendants claimed a tip credit in the amount of the difference between the direct cash wage ($6.88 per hour) and the federal minimum wage ($7.25) (and assuming the tip credit is valid, which Plaintiff does not concede and Defendants bear the burden of establishing), Defendants effectively only paid Plaintiff Cruz-Perez, at most, $7.25 per hour. As a result, any deduction causes a minimum wage violation under the FLSA.

27.     Likewise, in the pay-period beginning on July 24, 2017 and ending on August 6, 2017, Defendants deducted $10 of the $50 gaming license renewal fee from Plaintiff Cruz-Perez's wages. At the time, Mr. Cruz earned a direct cash wage of $6.88 per hour. Given that, pursuant

to the FLSA, Defendants claimed a tip credit in the amount of the difference between the direct cash wage ($6.88 per hour) and the federal minimum wage ($7.25) (and assuming the tip credit is valid, which Plaintiff does not concede and Defendants bear the burden of establishing), Defendants effectively only paid Plaintiff Cruz-Perez, at most, $7.25 per hour. As a result, any deduction causes a minimum wage violation under the FLSA.

28.     These allegations apply with equal force to the claims under the IMWL given that, because Plaintiff Cruz-Perez's hourly rate was lower than the FLSA's $7.25 per hour minimum wage, it was likewise lower than the IMWL's $8.25 (in place from 2017-2019) and $9.25 (in place in 2020) minimum wage rates.

29.     Pursuant to 29 U.S.C. § 216(b), "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." As Defendants violated the FLSA's minimum wage and/or overtime compensation provisions through an illegal gaming license deduction, Plaintiff and all others similarly situated are entitled to recover their unpaid minimum wages or overtime compensation, along with an additional equal amount as liquidated damages.

30.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA.

**Defendants Auto-Deducted 30-Minute Periods from Employees' Wages for Meal Periods Despite Failing to Provide Bona Fide Meal Periods**

31.     During a span of several months in 2017, Defendants automatically deducted 30-minute periods from the wages of Plaintiff Cruz-Perez and all other similarly situated employees.

CLASS AND COLLECTIVE ACTION COMPLAINT

32.     However, Plaintiff Cruz-Perez and all other similarly situated employees were not provided a 30-minute bona fide meal period.

33.     Instead, Plaintiff Cruz-Perez and all other similarly situated employees simply worked their scheduled shifts and, then, without authorization (written or otherwise), Defendants automatically deducted one 30-minute period from the wages of Plaintiff Cruz-Perez and all other similarly situated employees.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiff brings Count I, the FLSA claim arising out of Defendants' unlawful gaming license deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself individually and the following collective action class:

### Fair Labor Standards Act Collective – Gaming License Deduction

All persons employed and paid a direct cash wage of $7.25 per hour or less at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from three years preceding the filing of this Class and Collective Action Complaint to the present.

35.     Plaintiff brings Count IV, the FLSA claim arising out of Defendants' unlawful 30-minute meal period deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself individually and the following collective action class:

### Fair Labor Standards Act Collective – Meal Period Deduction

All persons employed and paid a direct cash wage of $7.25 per hour or less at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, and for whom an automatic 30-minute deduction was taken from their wages for a meal period that did not occur, at any time from three years preceding the filing of this Class and Collective Action Complaint to the present.

36.     Plaintiff's FLSA claims (Counts I and IV) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).  Plaintiff, individually and on behalf of all others

similarly situated, seek relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action by U.S. Mail, email, text message, and/or posting an approved notice.

37.     Plaintiff brings Count II, the IWPCA claim arising out of Defendants' unlawful gaming license deduction policy, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself individually and the following class:

**Illinois Wage Payment and Collection Act Class – Gaming License Deduction**

All persons employed at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from 10 years preceding the filing of this Class and Collective Action Complaint to the present.

38.     Plaintiff brings Count III, the IMWL claim arising out of Defendants' unlawful gaming license deduction policy, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself individually and the following class:

**Illinois Minimum Wage Law Class – Gaming License Deduction**

All persons employed and paid a direct cash wage equal to or less than the applicable Illinois minimum wage at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from three years preceding the filing of this Class and Collective Action Complaint to the present.

39.     Plaintiff brings Count V, the IWPCA claim arising out of Defendants' unlawful 30-minute meal period deduction policy, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself individually and the following class:

**Illinois Wage Payment and Collection Act Class – Meal Period Deduction**

All persons employed at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, for whom a deduction was taken from their wages for a 30-minute meal period that did not occur, at any time from 10 years preceding the filing of this Class and Collective Action Complaint to the present.

40.     Plaintiff brings Count VI, the IMWL claim arising out of Defendants' unlawful 30-minute meal period deduction policy, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself individually and the following class:

**Illinois Minimum Wage Law Class – Meal Period Deduction**

All persons employed and paid a direct cash wage equal to or less than the applicable Illinois minimum wage at PNG casinos Hollywood Casino Joliet, Argosy Casino Alton, and/or Hollywood Casino Aurora, for whom a deduction was taken from their wages for a 30-minute meal period that did not occur, at any time from three years preceding the filing of this Class and Collective Action Complaint to the present.

41.     Plaintiff's Rule 23 claims, described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

42.     These classes each number in the thousands of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through U.S. Mail, email, text message, and/or posting an approved notice.

43.     There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

a.     Whether Defendants' employees' state-issued gaming license is primarily for Defendants' benefit or convenience;

b.     Whether Defendants' gaming license fee deductions cut into the minimum or overtime wages required to be paid these employees;

c.     Whether Defendants' meal period deductions cut into the minimum wages requires to be paid these employees;

d.     Whether Defendants' gaming license deduction policy constitutes a willful violation by Defendants of applicable laws;

e.     Whether Defendants' meal period deduction policy constitutes a willful violation by Defendants of applicable laws;  and

f.     Whether Defendants can produce evidence of a consent to the deductions given in writing at the time of the deductions.

44.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

45.     Plaintiff's claims are typical of those of the respective classes in that class members have been employed in the same or similar position as Plaintiff and were subject to the same or similar unlawful policies and practices as Plaintiff.

46.     A class action is the superior method for the fair and efficient adjudication to Plaintiff's claims.  Defendants have acted or refused to act on grounds generally applicable to the classes.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

CLASS AND COLLECTIVE ACTION COMPLAINT

Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

47.     Plaintiff is an adequate representative because Plaintiff is a member of each of the respective classes that he seeks to represent, and Plaintiff's interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiff and Plaintiff's undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

48.     Maintenance of this action is a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**COUNT I**

**Violation of the Fair Labor Standards Act of 1938**

**29 U.S.C. § 216(b)**

**Gaming License Deduction Policy**

49.     At all relevant times, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

50.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

CLASS AND COLLECTIVE ACTION COMPLAINT

51.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce.  At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

52.     At all relevant times, Defendants were "employers" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d).

53.     At all relevant times, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e).

54.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

55.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *See* 29 U.S.C. § 207(a).

56.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

57.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

58.     By deducting the cost of gaming licenses (whether initially obtaining, renewing, or maintaining) from the wages of Plaintiff and all similarly situated employees, Defendants have caused minimum wage violations given that Plaintiff and all similarly situated employees are paid a direct cash wage of $7.25 or less.  Further, the deductions are primarily for the benefit of

CLASS AND COLLECTIVE ACTION COMPLAINT

Defendants (as opposed to Plaintiff and all similarly situated employees) such that they may not be deducted.

59.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of the this Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

60.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

61.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

  a.  damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

  b.  reasonable attorneys' fees under the FLSA;

  c.  liquidated damages and/or pre-judgment interest;

CLASS AND COLLECTIVE ACTION COMPLAINT

d.  costs of suit under 29 U.S.C. § 216(b); and

e.  any further relief that the Court may deem just and equitable.

## COUNT II

**Violation of the Illinois Wage Payment and Collection Act**

**820 Ill. Comp. Stat. Ann. 115/14**

**Gaming License Deduction Policy**

62.     At all relevant times, Plaintiff and similarly situated employees have been party to an agreement with Defendants to be paid a set hourly rate for each hour worked within the meaning of the IWPCA. *See* 820 Ill. Comp. Stat. Ann. 115/2.  Pursuant to the agreement, Defendants are not permitted to deduct the cost of gaming licenses from the wages of Plaintiff and similarly situated employees.

63.     At all relevant times, Defendants have been the "employers" of Plaintiff and similarly situated employees within the meaning of the IWPCA. *Id*.

64.     At all relevant times, Plaintiff and similarly situated employees have been "employees" of Defendants within the meaning of the IWPCA. *Id*.

65.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

66.     By deducting the cost of gaming licenses (whether initially obtaining, renewing, or maintaining) from the wages of Plaintiff and all similarly situated employees, Defendants have violated the IWPCA's prohibition on wage deductions. *See* 820 Ill. Comp. Stat. Ann. 115/9.

67.     Plaintiff and all similarly situated employees have not provided Defendants their express written consent to the gaming license deductions.  Alternatively, to the extent Defendants may claim a document constitutes written consent, the consent was not freely given and was not given at the time the deduction was made. *Id*.

CLASS AND COLLECTIVE ACTION COMPLAINT

68.     Further, the gaming license deductions are primarily for the benefit of Defendants (as opposed to Plaintiff and all similarly situated employees) because they arise completely from Defendants' business and have no use in ordinary life.

69.     Plaintiff and all similarly situated employees are entitled to damages equal to gaming license deductions plus 2% of the deductions accruing each month within the 10 years preceding the filing of the Class and Collective Action Complaint. *See* 820 Ill. Comp. Stat. Ann. 115/14.

70.     As a result of these violations of the IWPCA's wage deduction provisions compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 820 Ill. Comp. Stat. Ann. 115/14, Defendants are liable for the gaming license deductions plus 2% of the deductions accruing each month, reasonable attorneys' fees, and costs of this action. *See* 820 Ill. Comp. Stat. Ann. 115/14.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

   a.  damages for unlawful gaming license deductions plus interest pursuant to the IWPCA;

   b.  reasonable attorneys' fees and costs pursuant to the IWPCA;

   c.  any further relief that the Court may deem just and equitable.

## COUNT III

### Violation of the Illinois Minimum Wage Law

### 820 Ill. Comp. Stat. Ann. 105/12

### Gaming License Deduction Policy

71.     At all relevant times, Plaintiff and similarly situated employees have entitled to the benefits and protections of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/4.

72.    At all relevant times, Defendants have been the "employers" of Plaintiff and similarly situated employees within the meaning of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3.

73.    At all relevant times, Plaintiff and similarly situated employees have been "employees" of Defendants within the meaning of the IMWL. *Id*.

74.    Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

75.    By deducting the cost of gaming licenses (whether initially obtaining, renewing, or maintaining) from the wages of Plaintiff and all similarly situated employees, Defendants have violated the IMWL's minimum wage provisions. *See* 820 Ill. Comp. Stat. Ann. 105/4.

76.    Further, the gaming license deductions are primarily for the benefit of Defendants (as opposed to Plaintiff and all similarly situated employees) because they arise completely from Defendants' business and have no use in ordinary life.  The gaming license deductions may not be considered wages because they primarily benefit the Defendants.

77.    Given that Plaintiff and all other similarly situated employees are paid at or below the Illinois minimum wage, every deduction is necessarily a minimum wage violation.  Here, the gaming license deductions created minimum wage violations in each work week during which they occurred.

78.    Plaintiff and all similarly situated employees are entitled to damages equal to three times (treble) the gaming license deductions plus 5% of the deductions accruing each month within the three (3) years preceding the filing of the Class and Collective Action Complaint. *See* 820 Ill. Comp. Stat. Ann. 105/12.

79.    As a result of these violations of the IMWL minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated

CLASS AND COLLECTIVE ACTION COMPLAINT

employees. Accordingly, pursuant to *See* 820 Ill. Comp. Stat. Ann. 105/12, Defendants are liable for three times (treble) the gaming license deductions plus 5% of the deductions accruing each month, reasonable attorneys' fees, and costs of this action. *See* 820 Ill. Comp. Stat. Ann. 105/12.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

    a.  treble damages for unpaid minimum wages plus interest pursuant to the IMWL;

    b.  reasonable attorneys' fees and costs pursuant to the IMWL;

    c.  any further relief that the Court may deem just and equitable.

## COUNT IV

### Violation of the Fair Labor Standards Act of 1938

### 29 U.S.C. § 216(b)

### 30-Minute Meal Period Deduction Policy

80.    At all relevant times, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

81.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

82.    Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce. At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

CLASS AND COLLECTIVE ACTION COMPLAINT

83.     At all relevant times, Defendants were "employers" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d).

84.     At all relevant times, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e).

85.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

86.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *See* 29 U.S.C. § 207(a).

87.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

88.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

89.     By deducting a 30-minute meal period from the wages of Plaintiff and all similarly situated employees, Defendants have caused minimum wage violations given that Plaintiff and all similarly situated employees are paid a direct cash wage of $7.25 or less.  Further, the 30-minute meal periods did not occur and, in any event, could certainly not be credited as a bona fide meal period such that Defendants simply failed to pay Plaintiff and all similarly situated employees for 30 minutes of wages.

90.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of the this Class and Collective Action Complaint plus periods of equitable tolling, because, as described above,

CLASS AND COLLECTIVE ACTION COMPLAINT

Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

91.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

92.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

      a.   damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

      b.   reasonable attorneys' fees under the FLSA;

      c.   liquidated damages and/or pre-judgment interest;

      d.   costs of suit under 29 U.S.C. § 216(b); and

      e.   any further relief that the Court may deem just and equitable.

CLASS AND COLLECTIVE ACTION COMPLAINT

## COUNT V

**Violation of the Illinois Wage Payment and Collection Act**

**820 Ill. Comp. Stat. Ann. 115/14**

**30-Minute Meal Period Deduction Policy**

93.     At all relevant times, Plaintiff and similarly situated employees have been party to an agreement with Defendants to be paid a set hourly rate for each hour worked within the meaning of the IWPCA. *See* 820 Ill. Comp. Stat. Ann. 115/2.  Pursuant to the agreement, Defendants are not permitted to deduct a 30-minute period for a meal period (a meal period which never occurred) from the wages of Plaintiff and similarly situated employees.

94.     At all relevant times, Defendants have been the "employers" of Plaintiff and similarly situated employees within the meaning of the IWPCA. *Id*.

95.     At all relevant times, Plaintiff and similarly situated employees have been "employees" of Defendants within the meaning of the IWPCA. *Id*.

96.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

97.     By deducting a 30-minute meal period from the wages of Plaintiff and all similarly situated employees for a meal period which did not occur, Defendants have violated the IWPCA's prohibition on wage deductions. *See* 820 Ill. Comp. Stat. Ann. 115/9.

98.     Plaintiff and all similarly situated employees have not provided Defendants their express written consent to the 30-minute meal period deductions (particularly because the meal periods did not occur).  Alternatively, to the extent Defendants may claim a document constitutes written consent, the consent was not freely given and was not given at the time the deduction was made. *Id*.

CLASS AND COLLECTIVE ACTION COMPLAINT

99.     Further, the 30-minute meal period deductions are primarily for the benefit of Defendants (as opposed to Plaintiff and all similarly situated employees) because no bona fide meal periods were provided.

100.    Plaintiff and all similarly situated employees are entitled to damages equal to the wages lost to the meal period deductions plus 2% of the deductions accruing each month within the 10 years preceding the filing of the Class and Collective Action Complaint. *See* 820 Ill. Comp. Stat. Ann. 115/14.

101.    As a result of these violations of the IWPCA's wage deduction provisions compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 820 Ill. Comp. Stat. Ann. 115/14, Defendants are liable for the 30-minute meal period deductions plus 2% of the deductions accruing each month, reasonable attorneys' fees, and costs of this action. *See* 820 Ill. Comp. Stat. Ann. 115/14.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

    a.   damages for unlawful meal period deductions plus interest pursuant to the IWPCA;

    b.   reasonable attorneys' fees and costs pursuant to the IWPCA;

    c.   any further relief that the Court may deem just and equitable.

## COUNT VI

### Violation of the Illinois Minimum Wage Law

### 820 Ill. Comp. Stat. Ann. 105/12

### 30-Minute Meal Period Deduction Policy

102.    At all relevant times, Plaintiff and similarly situated employees have been entitled to the benefits and protections of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/4.

103.    At all relevant times, Defendants have been the "employers" of Plaintiff and similarly situated employees within the meaning of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3.

104.    At all relevant times, Plaintiff and similarly situated employees have been "employees" of Defendants within the meaning of the IMWL. *Id*.

105.    Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

106.    By deducting a 30-minute meal period from the wages of Plaintiff and all similarly situated employees, Defendants have caused minimum wage violations.  Further, the 30-minute meal periods did not occur and, in any event, could certainly not be credited as a bona fide meal period such that Defendants simply failed to pay Plaintiff and all similarly situated employees for 30 minutes of wages.  As a result, Defendants have violated the IMWL's minimum wage provisions. *See* 820 Ill. Comp. Stat. Ann. 105/4.

107.    Given that Plaintiff and all other similarly situated employees are paid at or below the Illinois minimum wage, every deduction is necessarily a minimum wage violation.  Here, the 30-minute meal period deductions (for meal periods that did not occur) created minimum wage violations in each work week during which they occurred. *Id*.

108.    Plaintiff and all similarly situated employees are entitled to damages equal to three times (treble) the meal period deductions plus 5% of the deductions accruing each month within the three (3) years preceding the filing of the Class and Collective Action Complaint. *See* 820 Ill. Comp. Stat. Ann. 105/12.

109.    As a result of these violations of the IMWL minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to the IMWL, Defendants are liable for three times (treble) the

gaming license deductions plus 5% of the deductions accruing each month, reasonable attorneys' fees, and costs of this action. *See* 820 Ill. Comp. Stat. Ann. 105/12.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

       a.   treble damages for unpaid minimum wages plus interest pursuant to the IMWL;

       b.   reasonable attorneys' fees and costs pursuant to the IMWL;

       c.   any further relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

CLASS AND COLLECTIVE ACTION COMPLAINT

Dated:  April 28, 2020     Respectfully submitted,

**WERMAN SALAS P.C.**

*/s/ Douglas M. Werman*
Douglas M. Werman
77 W. Washington Street, Suite 1402
Chicago, IL 60602
Telephone: 312-419-1008
Facsimile: 312-419-1025
Email: dwerman@flsalaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO Bar No. 43450
*pro hac vice application forthcoming*
Alexander T. Ricke, IL Bar No. 6313820
*pro hac vice application forthcoming*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email:  hanson@stuevesiegel.com
Email:  ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
*pro hac vice application forthcoming*
Michael J. Rahmberg, MO Bar No. 66979
*pro hac vice application forthcoming*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone: 816-781-0002
Facsimile: 816-781-1984
Email:  ryan@mcclellandlawfirm.com
Email:  mrahmberg@mcclellandlawfirm.com

**Attorneys for Plaintiff**

CLASS AND COLLECTIVE ACTION COMPLAINT